APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801)415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

Patrick J. Perotti, Esq.
Nicole T. Fiorelli, Esq.
Frank A. Bartela, Esq.
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469 Fax
pperotti@dworkenlaw.com
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com
(Pro hac vice motions to be filed)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| CLARENCE KIRKPATRICK, Individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GREENIX HOLDINGS, LLC, dba Greenix Pest Control, LLC,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br>**(Jury Trial Requested)**<br><br>Case No.:<br><br>District Judge |

## INTRODUCTION

1. This is an action brought by Clarence Kirkpatrick ("Plaintiff") against Greenix Holdings, LLC ("Defendant"), his former employer, for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

2. Plaintiff brings this case individually and as a putative representative for a collective action under the FLSA.

3. Plaintiff and the putative class members were not paid overtime wages for all hours worked over 40 hours per week, even though they were "non-exempt" employees and thus entitled to such wages under state and federal law.

## JURISDICTION & VENUE

4. Jurisdiction in this case is based on 28 U.S.C. §§ 1331 and 1332. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because Defendant has its principal place of business in Orem, Utah and thus resides in this district.

## PARTIES

6. Defendant's business primarily involves the marketing, sale, and provision of pest control services to residential customers.

7. Defendant employs persons such as Plaintiff and the putative class members to market, sell, and provide Defendant's services to customers. These employees are referred to as "Pest Control Technicians," or "Service Pros" (referred to throughout this Complaint as "Service Pros).

8. Defendant operates in the United States across approximately 12 states.

9. Plaintiff is an adult individual who was employed by the Defendant as a "Service Pro" from approximately February, 2021 through July, 2022.

10. Plaintiff brings this action individually and collectively for all persons who at any point in the last three years (a) worked for Defendant in the position of Service Pro; and (b) worked in excess of 40 hours per week.

## FACTS COMMON TO ALL CLAIMS

11. During the last three years, Defendant has operated approximately 21 branches across 12 states.

12. Defendant hires individuals for the position of Service Pro. These individuals are responsible for providing Defendant's pest control services at customers' locations, as well as marketing and selling additional and/or upgraded pest control services to new and existing clients, and communicating with clients regarding Defendant's pest control services.

13. The job responsibilities and payment policies described in this section apply to Plaintiff and all other Service Pros employed by Defendant across its branches.

14. Defendant provided Service Pros with cell phones to assist them in their duties, both for communicating with clients, and as a clock-in method, through an app installed on the phones.

15. Service Pros proceed to the first work stop of the day (i.e., at a customer's location) and then clock-in when he or she arrived at the location using Defendant's time-keeping app.

16. Service Pros are required to arrive at their first work stop by 8:00 AM.

17. Service Pros are not permitted to clock-in before arriving at the first job site.

18. Service Pros are required to clock out for the day when they complete their final stop of the day *before* commuting home.

19. Service Pros are generally required to leave their last work stop at 4:00 PM.

20. Service Pros are paid for the time they are clocked-in.

21. These clocked-in hours typically total around a minimum of 40 per week, since the Service Pros are generally clocked-in between 8:00 AM and 4:00 PM Monday through Friday and often on Saturday.

22. Service Pros are not paid for time they are working, but not clocked-in during the work day.

23. The Service Pros must perform work necessary to their job outside the time periods they are permitted by Defendant to be clocked-in.

24. First, as part of Plaintiff's and the Service Pros' daily routine, they spend time at home performing necessary preparatory work, such as filling up water tanks for diluting the pest control chemicals, to prepare for their daily pest control activities.

25. Defendant does allow the Service Pros to fill up their water tanks once a week, at their weekly Monday meetings. However, this fill up is not sufficient to last the week, and often not even one day, depending on the number or type of jobs performed.

26. This necessary prep work is performed before driving to the first job site, and therefore performed off-the-clock, and not paid by Defendant.

27. Second, after clocking out at the final stop of the day, Service Pros still have to drive home and perform additional work necessary and integral to their job, such as cleaning out residual harmful chemicals and/or dead rodents or other pests. This cleaning was necessary to

ensure that the Service Pros had a safe and sanitary work space, as well as maintaining client satisfaction by keeping a clean and odorless truck.

28. In fact, Defendant has a strict clean truck policy. Trucks are inspected regularly, and Service Pros are written up if they show up to their weekly Monday meetings with a dirty truck.

29. The above-described cleaning work is performed off-the-clock and thus not paid by Defendant.

30. The Service Pros are also required to launder and keep their uniforms clean at all times.

31. The above-described work is performed off the clock as well, and was therefore unpaid.

32. Finally, the Service Pros also spend time every day answering client phone calls and talking with clients. These calls involve answering client questions as to their pest control needs, as well as marketing and selling Defendant's pest control services.

33. These above-described calls typically occur after they clock out, and are therefore not compensated.

34. The drive-time to and from a customer's location also is performed off the clock and therefore not compensated.

35. Performance of the off-the-clock work described in paragraphs 24-34 results in Service Pros working an average of 5-10 additional hours a week for which they are not compensated.

36. As a result of being required to perform the above described off-the-clock work in addition to the work they performed while clocked-in (with the clocked-in work typically

totaling a minimum of around forty hours per week), there were weeks during the period of their employment with Defendant in which the Plaintiff and other Service Pros worked over 40 hours per week.

37. Specifically, during his tenure as a Service Pro with Defendant (February, 2021 through July 2022), Plaintiff worked over forty hours per week (including both clocked-in time and uncompensated time) for most weeks.

38. The Service Pros are not paid overtime wages for all hours they work over 40 hours per week as a result of Defendant not compensating the Service Pros for necessary work they perform off-the-clock.

## COLLECTIVE ACTION ALLEGATIONS

39. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

40. Plaintiff brings this action not only for himself but as a representative for a collective action on behalf of all persons employed with Defendant at any time during the period of three years prior to the date of filing Plaintiff's complaint and who meet the definition of the putative class members set forth above.

41. Plaintiff is similarly situated to those persons and will prosecute this action vigorously on their behalf.

42. The identity of all putative class members is unknown at this time, but is known to Defendant, and is set forth in Defendant's records. Plaintiff is entitled to review these records and identify the other putative class members who have a right to join this collective action.

43. Plaintiff, through counsel, will file a request under 29 U.S.C. Section 216 for this court to notify all of those persons, to allow them to opt-in to this proceeding and be subject to

this court's decision, or that of the fact finder, on the right to the unpaid and overtime wages described above.

## FIRST CLAIM FOR RELIEF

**Violation of Fair Labor Standards Act ("FLSA")**
**(Collective Action)**

44. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

45. Defendant is an "employer" engaged in interstate commerce, covered by the overtime requirements set forth in the Fair Labor Standards Act ("FLSA").

46. As employees for the Defendant, Plaintiff and the putative class members work or worked in excess of forty hours per week but were not paid overtime wages for all hours worked over forty hours per week.

47. Plaintiff and the putative class members do not qualify for any exemption from the overtime obligations imposed by the FLSA, and therefore are required to be paid time and a half their regular hourly rate for all hours worked over forty hours per week

48. Pursuant to 29 C.F.R. § 790.6, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted." 29 C.F.R. § 790.6(a).

49. Plaintiff and the putative class members commenced their workday by performing integral preparatory work such as filling water bottles and diluting chemicals, and completed their workday by performing necessary cleaning of their truck and equipment. Therefore, all periods of time between these two activities, including time spent driving to and from all job sites, are compensable and must be included in computation of hours worked.

50. Because Defendant only allowed Plaintiff and putative class members to be clocked in between the time of their arrival at their first job site and the time of departure from their last job site, Defendant failed to compensate Plaintiff and putative class members for work performed prior to clocking in and work performed after clocking out as described above in paragraphs 24 to 34.

51. As a result of being required to perform necessary work off-the-clock work in addition to the work they performed while clocked-in, there were weeks during the period of their employment with Defendant in which the Plaintiff and putative class members worked over 40 hours.

52. Plaintiff and putative class members were not paid overtime wages for all hours they worked over 40 hours per week as a result of Defendant not compensating the Service Pros for necessary work they performed off-the-clock.

53. The exact amount of compensation, including overtime compensation that Defendant has failed to pay the Plaintiff and the putative class members, is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant, or were not kept by Defendant.

54. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff and the putative class members are entitled to review their records of hours worked to determine the exact amount of overtime wages owed by Defendant. Absent Defendant keeping these records as required by law, Plaintiff and the putative class members are entitled to submit their information about the number of hours worked.

55. Throughout Plaintiff's and the putative class members' employment, Defendant has known that it is required to pay Plaintiff and the putative class members overtime wages at the rate of time and a half for all hours worked over 40 in any week. Defendant has known that Plaintiff and the putative class members are and were not exempt from the overtime obligations imposed by the FLSA. In spite of such knowledge, Defendant has willfully withheld and failed to pay overtime compensation to which Plaintiff and the putative class members are entitled. Because the Defendant's failure to pay such wages was willful pursuant to 28 U.S.C. § 255(a), Plaintiff and the putative class members are entitled to these wages dating back three years.

56. Defendant's failure to pay Plaintiff and the putative class members compensation in accordance with the lawful overtime rates is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiff and the putative class members are entitled to liquidated damages in an amount equal to any compensation, including overtime wages, which they have not been paid.

57. Plaintiff has been required to file this action as the result of Defendant's actions in failing to pay him proper compensation. As such, Plaintiff is entitled to attorneys' fees and costs incurred pursuant to 28 U.S.C. § 216(b).

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1. Awarding Plaintiff and the putative class members unpaid overtime wages as to be determined at trial together with any liquidated damages allowed by law;

  2. Enjoining Defendant from engaging in future violations of federal wage and hour laws;

  3. For a judgment against Defendant for all damage, relief, or any other recovery whatsoever permitted by law;

  4. For an Order at the earliest possible time determining that this matter may proceed as a collective action under 29 U.S.C. Section 216, and allowing for conditional certification of this case as such;

  5. Awarding Plaintiff his reasonable costs and attorneys' fees necessarily incurred herein;

  6. Awarding Plaintiff pre- and post-judgment interest at the highest lawful rate; and

  7. Awarding Plaintiff such other and further relief as the Court deems just and proper.

  DATED this 13th day of January, 2023.

        **HOLLINGSWORTH LAW OFFICE, LLC**

        <u>/s/ April L. Hollingsworth</u>
        APRIL L. HOLLINGSWORTH
        Attorneys for Plaintiff