APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801)415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

Nicole T. Fiorelli, Esq. (OH Bar No. 0079204)*
Frank A. Bartela, Esq. (OH Bar No. 0088128)*
*Admitted Pro Hac Vice*
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio, 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH

| | |
|---|---|
| CLARENCE KIRKPATRICK, STEPHEN YOUNG, and RENE VILLAFANE, Individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>GREENIX HOLDINGS, LLC, dba Greenix Pest Control, LLC,<br><br>    Defendant. | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED COLLECTIVE AND CLASS ACTION SETTLEMENT AND PERMISSION TO FILE SECOND AMENDED COMPLAINT**<br><br>Case No.: 2:23-cv-00033-JNP<br><br>Honorable Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

# Table of Contents

I.  Introduction ............................................................................................................... 3

II.  Factual and Procedural History ................................................................................ 3

III.  Settlement Terms ....................................................................................................... 6

    a.  Scope ................................................................................................................ 6

    b.  Monetary terms ............................................................................................... 8

    c.  Notice and administration ............................................................................. 11

    d.  Payment distributions ................................................................................... 12

    e.  Release ........................................................................................................... 13

IV.  The Proposed Sub-Classes Should Be Certified For Settlement Purposes ..................... 13

    a.  FLSA Collective action ................................................................................ 13

    b.  Rule 23 subclasses ....................................................................................... 14

        1.  Rule 23(a) Factors ............................................................................ 14

            a.  Numerosity ............................................................................. 14

            b.  Commonality ......................................................................... 15

            c.  Typicality .............................................................................. 16

            d.  Adequacy of Representation ................................................... 16

        2.  Rule 23(b)(3) factors ........................................................................ 16

            a.  Predominance ......................................................................... 17

            b.  Superiority ............................................................................. 18

V.  The Parties' Settlement Should be Granted Preliminary Approval ................................. 18

    a.  The FLSA approval criteria are satisfied ..................................................... 19

        1.  The settlement was achieved in an adversarial context ...................... 19

        2.  Plaintiffs are represented by competent, experienced wage and hour and class action attorneys ................................................................. 20

        3.  The settlement reflects a reasonable compromise of the disputed issues ................................................................................................ 20

        4.  The settlement is fair ......................................................................... 21

    b.  The Rule 23 approval criteria are satisfied .................................................. 24

        1.  The settlement was fairly fand honestly negotiated ........................... 26

        2.  The parties believe the settlement is fair and reasonable.................... 27

        3.  Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.................................................... 27

        4.  The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation...................................................................................... 27

VI.  The Notice Plan is Appropriate................................................................................ 28

VII.  Conclusion .............................................................................................................. 29

## I.    <u>INTRODUCTION</u>

Plaintiffs Clarence Kirkpatrick, Rene Villafane and Stephen Young filed this proposed hybrid class action/collective action lawsuit against Defendant Greenix Holdings, LLC ("Greenix"), alleging violations of both federal and state wage and hour laws, contending they were not paid overtime for off-the-clock work they performed. Following discovery, two mediations and extended, good-faith negotiations spanning approximately nine months, the Parties have reached a class-wide settlement that avoids the costs and expense of continued litigation.

Plaintiffs move the Court to preliminarily approve the Settlement Agreement[1] so that notice may be sent to the Opt-in Plaintiffs and the Rule 23 Class, a fairness hearing may be set, and the Parties can move toward final approval and payment to the Opt-In Plaintiffs and Participating Settlement Class Members. To facilitate the settlement, Plaintiffs also move this Court to permit them to file a Second Amended Complaint.[2]

## II.    <u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff Kirkpatrick filed suit on January 13, 2023, alleging that his former employer Greenix failed to pay him overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§ 201, *et seq*. and seeking to bring the case as a collective action on behalf of others similarly situated. Dkt. 1. Greenix employs persons such as Kirkpatrick to provide pest control services to customers. Dkt. 130, Corrected First Amended Complaint ("FAC") at ¶ 9. These individ  uals are referred as "Service Pros" or "Pest Control Technicians." *Id*. As a Pest Control Technician, Kirkpatrick alleged that he performed certain job duties off-the-clock such as preparatory work,

---

[1] All capitalized terms shall have the same meaning as given in the Settlement Agreement. A copy of the Settlement Agreement is attached hereto as Exhibit 1.

[2] A copy of the Second Amended Complaint is attached hereto as Exhibit 2.

cleaning tasks, answering client questions and marketing pest control services, laundering uniforms, and drive time. *Id*. at ¶¶26-37. Kirkpatrick alleged that these uncompensated hours were in addition to the approximate 40 hours per week of on-the-clock work he performed, resulting in approximately 5 to 10 hours per week of unpaid overtime. *Id*. at ¶38. Kirkpatrick also alleged that other Pest Control Technicians across Greenix locations throughout the country were subject to the same unlawful practice. *Id*. at ¶¶14-41.

Greenix filed an Answer on February 24, 2023. Dkt. 22. Greenix denied that Kirkpatrick or other Pest Control Technicians were required to perform job duties off-the-clock including those alleged in the Complaint. Greenix also asserted a multitude of affirmative defenses including but not limited to Plaintiffs' actions were a direct violation of Greenix company policies, Greenix's good faith compliance with applicable laws, any alleged off-the-clock time was de minimis and therefore not compensable, and Plaintiffs were properly compensated for all work performed. *Id*.

The parties thereafter negotiated and filed a proposed scheduling order on March 30, 2023. Dkt. 26.

Plaintiffs' counsel continued investigating this claim, and Kirkpatrick filed "opt-in" forms for other similarly-situated employees in the spring and early summer of 2023, so that they could participate in the FLSA claim. (*see, e.g.*, Dkt. Nos. 28, 29).

On June 15, 2023, Kirkpatrick moved to amend his complaint to add Plaintiffs Stephen Young and Rene Villafane, to assert unpaid overtime claims against Greenix under the wage and hour laws of Illinois and Pennsylvania respectively. Dkt. 30. The Plaintiffs contended that these claims arose out of the same facts and occurrences alleged in Kirkpatrick's original complaint. *Id*. Greenix opposed Plaintiffs' Motion on several grounds, and Plaintiffs filed a reply brief. Dkt.

Nos. 35, 41. This Court ultimately granted Plaintiff's Motion to amend the complaint, and granted Greenix's motion on other grounds, and Plaintiffs filed their First Amended Complaint on February 23, 2024. Dkt. Nos. 45, 46.

In response to the FAC, Greenix filed an Answer and a partial motion to dismiss Plaintiffs' claims, which Plaintiffs opposed. Dkt. Nos. 54, 55, 58. A zoom motion hearing was held on January 16, 2025. Dkt. 126. Thereafter, this Court in part denied Greenix's motion to dismiss Plaintiffs' individual and class claims and in part granted Greenix's motion and ordered the Plaintiffs to re-file the Complaint to correct the caption and include additional information to meet notice pleading requirements. Dkt. 127. A corrected First Amended Complaint was filed at Dkt. 130. Greenix answered (Dkt. 131), again alleging various defenses, including the existence of an already identical putative action, *Pizzillo v. Greenix Holdings, LLC,* Civil No. 2:24-cv-00153-JNP-DBP. (*Pizzillo* now has been resolved, as set forth in the filings of the parties in that matter, but was pending at the time.)

Plaintiffs also moved for conditional certification of the FLSA claims as a collective action on June 19, 2023. Dkt. 31. Plaintiff supported his motion with discovery responses from Greenix as well as affidavits from Kirkpatrick and several opt-in Plaintiffs, including Plaintiffs Young and Villafane. Dkts. 31-2-6. Greenix opposed Plaintiffs' Motion, and Plaintiffs filed a reply brief. Dkt. Nos. 36, 42. This Court ultimately granted Plaintiffs' Motion on February 23, 2024 (Dkt. 45) and thereafter notice issued to putative members of the FLSA collective action.[3] Ultimately, 206 persons filed consent forms and opted-in to the litigation (such persons are referred to as "Opt-in Plaintiffs") Dkt Nos. 10, 28, 29, 63-93, 95, 97-102, 105-106, 118, 125, 137.

---

[3]To allow the parties' time to effectuate the notice process, the parties agreed to toll the statute of limitations, following this Court's ruling, for a total of 13 weeks. See Dkts. 51, 53, 57.

The parties thereafter commenced settlement discussions, and on August 20, 2024 moved this Court for a stay of the litigation deadlines to work towards that goal, which this Court granted. Dkt. Nos. 103, 104. The parties engaged in informal discovery, investigation, and the exchange of surveys, pay, hours, compensation data, and certain other information to assist with case evaluation and settlement. Fiorelli Decl, ¶3. The first mediation with private mediator Karin Hobbs occurred on September 5, 2024. Dkt. 104. Settlement was not reached; however, the parties scheduled a second mediation with mediator Hobbs, which ultimately occurred on November 6, 2024. Dkt. 112. The mediation was unsuccessful, and the parties requested a lift of the stay and sought to re-schedule litigation deadlines. Dkt. 113.

The parties then negotiated a revised schedule and various discovery parameters, which is reflected in this Court's Order of February 10, 2025. Dkt. 133.

While the case was returned to active litigation, the parties continued to discuss settlement. Fiorelli Decl. ¶¶4-5. From February 2025 through August 2025, the parties worked diligently to resolve this litigation. *Id.* ¶6. The parties communicated on various issues of law, and exchanged data including hours worked, rates of pay, dates of employment, and other germane information. *Id.* ¶7. The parties reached an agreement in principle in mid-August 2025, and the settlement agreement was executed on January 13, 2026. *Id.* ¶8.

## III.    SETTLEMENT TERMS

### a.    Scope

The Parties' Settlement Agreement covers 202 FLSA Opt-in Plaintiffs[4] and persons meeting the following state-wage and hour based Rule 23 class definitions ("Rule 23 Class

---

[4]While 204 consent forms were filed, two individuals settled their FLSA claims in an identical matter titled *Pizzillo v. Greenix*, Case No. 2:24-cv-00153-JNP-DBP, which made similar claims to this case, and which has been settled and that case dismissed with prejudice. Two of the 204 have thus been removed from the group of Opt-in Plaintiffs settling their claims here. Dkt. 139.

Members)[5] (the Parties seek certification of these sub-classes for settlement purposes only):

**Illinois subclass:** All persons who at any point during the time period of February 23, 2021, to September 1, 2025, were employed by Greenix in the state of Illinois to perform pest control activities and related service at a customer's location; were so employed for a period of at least one week; and did not sign an arbitration agreement with Greenix.

**Kentucky subclass:** All persons who at any point during the time period of September 1, 2022, to September 1, 2025, were employed by Greenix in the state of Kentucky to perform pest control activities and related service at a customer's location; were so employed for a period of at least one week; and did not sign an arbitration agreement with Greenix.

**Michigan subclass:** All persons who at any point during the time period of September 1, 2022, to September 1, 2025, were employed by Greenix in the state of Michigan to perform pest control activities and related service at a customer's location; were so employed for a period of at least one week; and did not sign an arbitration agreement with Greenix.

**Nebraska subclass:** All persons who at any point during the time period of September 1, 2021, to September 1, 2025, were employed by Greenix in the state of Nebraska to perform pest control activities and related service at a customer's location; were so employed for a period of at least one week; and did not sign an arbitration agreement with Greenix.

**New Jersey subclass:** All persons who at any point during the time period of September 1, 2019, to September 1, 2025, were employed by Greenix in the state of New Jersey to perform pest control activities and related service at a customer's location and were so employed for a period of at least one week.

**Pennsylvania subclass:** All persons who at any point during the time period of February 23, 2021, to September 1, 2025, were employed by Greenix in the state of Pennsylvania to perform pest control activities and related service at a customer's location; were so employed for a period of at least one week; and did not sign an arbitration agreement with Greenix.

**Wisconsin subclass:** All persons who at any point during the time period of September 1, 2023, to September 1, 2025, were employed by Greenix in the state of Wisconsin to perform pest control activities and related service at a customer's location; were so employed for a period of at least one week; and did not sign an arbitration agreement with Greenix.

---

[5] The differing time periods for the sub-classes reflect the different statute of limitations applicable to each state, as well as the fact that the Illinois and Pennsylvania class claims were asserted on February 23, 2024 (Dkt 46), while the remaining states have yet to be added (the Parties agreed, with this Court's permission, that Plaintiffs would file a Second Amended Complaint, including the remaining states, upon this Court granting preliminary approval of the Settlement Agreement).

Excluded from the subclasses are any individuals who have settled their claim in *Pizzillo*.

b. **Monetary terms**

Greenix agrees to fund a common fund of $1,996,268.75, which is broken down as follows with the following applicable key terms:

| $1,143,380.00 | Opt-in Plaintiffs Settlement Payments<br><br>- Fund amount determined by multiplying number of complete weeks (8,167) worked by Opt-in Plaintiffs within the applicable statute of limitations by $140 per week.<br><br>- Opt-in Plaintiffs need not submit a Claim Form to receive a Settlement Payment; except as provided related to plaintiffs working in New Jersey as set forth in Section 2.3.4. |
|---|---|
| $149,388.75 | Participating Settlement Class Member Settlement Payments<br><br>- Fund amount determined by multiplying number of complete weeks (9,485) worked by Class Members within the applicable statute of limitations by $140 per week and then multiplying this number by 11.25%, which the Parties agree should be a sufficient fund to pay Settlement Payments to all Participating Class Members.<br><br>- Rule 23 Class Members must submit a Claim Form to become a Participating Settlement Class Member and receive a Settlement Payment;<br><br>- To the extent that the amount attributable to the Participating Settlement Class Members is less than this portion of the fund, any remaining funds shall revert to Greenix;<br><br>- To the extent that the amount attributable to the Participating Settlement Class Members is greater than this portion of the fund, Settlement Payments to the Participating Settlement Class Members shall be reduced *pro rata* so that in no event does this portion of the fund exceed $149,388.75 |
| $650,000 | Attorneys' Fees and Costs |
| $32,000 | Service Awards |
| $21,500 | Administration costs |

The parties provide below some additional information on the settlement terms for this Court's information:

**The Settlement Payment:** The Settlement Payment formula for each Participating Settlement Class Member and Opt-In Plaintiff in most cases will be $140 multiplied by the number of complete workweeks[6] said individual worked within that individual's applicable Statute of Limitations period.[7] Based on data exchanged in discovery, in mediation, and settlement negotiations, the Parties agreed for purposes of settlement that the average regular rate attributable to the Class was approximately $18.72 per hour and the overtime rate was therefore $28.08. Fiorelli Decl ¶10. Plaintiffs' Corrected First Amended Complaint pled that the class worked an average of 5-10 additional hours per week for which they were not compensated and also sought liquidated damages. Dkt. 130 ¶38, Prayer for relief. Greenix denied that Plaintiffs and the class worked forty (40) hours per week, denied employees worked uncompensated straight time or overtime, and denied that Plaintiffs were entitled to any wages. See generally, Answer, Dkt 131. Ultimately, the weekly amount of $140 represents the compromise reached following extended contentious negotiations.

**Claim Forms:** Because the Opt-in Plaintiffs have already expressly consented to participating in this litigation, and many participated in informal discovery, the Parties chose to send them a Settlement Payment based on their status as a party in the litigation on an active

---

[6] The Opt-in Plaintiffs and Participating Settlement Class Members will receive the full $140 per week unless there is a successful challenge by the particular individual as to number of eligible workweeks, which results in an increase in the total number of workweeks or there is a higher participation rate for Rule 23 class members than anticipated. If this occurs, since the fund cannot exceed the agreed-upon amounts set forth in the table above, the Opt-in Plaintiffs and/or Participating Settlement Class Members' shares would be reduced pro-rata. See Settlement Agreement ¶¶2.2, 2.3.

[7] Such workweeks were determined from Greenix's records. Fiorelli Decl. ¶11. The Opt-in Plaintiffs and Rule 23 Class Members are permitted to challenge workweeks as set forth in the Settlement Agreement ¶2.3.3.

basis. In contrast, many individuals meeting the Rule 23 class definitions did not file opt-in forms to participate in the FLSA collective action. Therefore, the parties agreed to allow those individuals to choose whether to participate in the Rule 23 portion of the Settlement by providing the opportunity to opt out of the settlement and to receive a Settlement Payment by submitting a Claim Form.

**Rule 23 Class portion of fund**: The Parties believe that the fund available for the Rule 23 Class, which was calculated based on an assumed 11.25% participation rate, is more than sufficient to pay all Settlement Payments claimed. First, as a general matter, participation rates in class action settlements are typically less than 10%. Fed. Trade Comm'n, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns 11 (2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%."); *Fernandez v. Vict. Secret Stores, LLC,* 2008 U.S. Dist. LEXIS 123546, *26 (C.D. Cal. July 21, 2008) (granting final approval of settlement of a class action wage and hour claim with a claims rate of less than 9.5%); *Treviso v. Nat'l Football Museum, Inc.*, No. 5:17-CV-00472-CAB2024 U.S. Dist. LEXIS 30838, *18 (N.D. Ohio Feb. 12, 2024) ("the 5.34% claims rate is typical for consumer class actions").

The generally low participation rates in class and collective actions has already been demonstrated in this case. Only eight percent of Pest Control Technicians opted into the FLSA collective action. Fiorelli Decl, ¶12. Further, there is a significant overlap between members of the subclasses and those who previously received notice to participate in the FLSA collective action. *Id.* ¶13. Therefore, most class members who would choose to participate have likely already done so, and there are sufficient funds set aside for those class members who do choose

to submit a Claim Form.

    **c.  <u>Notice and administration</u>**

The Parties have agreed to use a Settlement Administrator, Phoenix Class Administrators, to send notice, manage Claim Forms, process opt-outs and objections, and issue Settlement Payments.

Within ten (10) days of the Court's preliminary approval of the settlement, the Settlement Administrator shall email and mail notice of the Settlement to all the Opt-in Plaintiffs and Rule 23 Class Members. Settlement Agreement, page iii. The Notice the Parties submit for this Court's approval contains a description of the case; informs the Opt-in Plaintiffs and Rule 23 Class Members how to obtain a Settlement Payment or alternatively the Rule 23 Class Members' right to opt-out or object to the settlement, as well as the deadlines for these items; describes the attorneys' fees and additional payment provisions of the settlement; and advises how to obtain more information about the litigation and the settlement. *See* Exhibit A to the Settlement Agreement.

The Settlement Administrator will also (a) process Claim Forms, objections, and make determinations as to validity; (b) maintain a list of Rule 23 Class Members who opt-out of or object to the Settlement (and will notify Class Counsel and Greenix Counsel of same); (c) verify the last known address for each Opt-in Plaintiff and Rule 23 Class Member through a generally utilized, national address update database prior to mailing the Notice; (d) print, mail, and email the Notice; (e) establish and maintain a toll-free informational telephone support line to assist Rule 23 Class Members who have questions regarding the Notice; (f) conduct additional address searches for mailed Notices that are returned as undeliverable and, to the extent the new and more current addresses are found, also reprint and re-mail the Notice accordingly; (g) calculate

Participating Settlement Class Members' settlement share; (h) field inquiries from Rule 23 Class Members; (i) print and issue checks, and prepare W-2 and 1099 Forms; (ji) provide a declaration indicating compliance with the noticing efforts; (k) distribute payments to Named Plaintiffs, Opt-in Plaintiffs, Participating Settlement Class Members, and Class Counsel; and (l) issue any W-2 forms, 1099 forms, or other tax forms as required by law for all amounts paid pursuant to the Settlement Agreement. All costs relating to the Administrator shall be paid from the Common Fund. All acts of the Administrator shall conform to the Settlement Agreement and any Orders of the Court.

The deadline for Rule 23 Class Members to submit a Claim Form, opt-out or object is seventy (70) days from the Court's preliminary approval of the settlement, which gives Rule 23 Class Members sixty (60) days to make a decision and submit their Claim Form. *See* Settlement Agreement at ¶ 3.8.3. Any person wishing to object to the settlement will be required to follow the procedures set forth in the notice. *Id* at ¶ 3.9. A Rule 23 Class Member who opts-out may not object to the settlement. *Id.*

The Parties also negotiated and included in the Settlement Agreement the ability for Opt-in Plaintiffs and Settlement Class Members to dispute the number of complete work weeks worked within their respective statute of limitations periods. Disputes may be submitted to the Settlement Administrator regarding the disputed data. *Id.* at ¶ 2.3.3.

### d. Payment distributions

Within ten (10) days of the settlement becoming Final (*see* Settlement Agreement, ¶1.10), Greenix will fund the Common Fund. Settlement Agreement, page iii. Ten days thereafter, the Settlement Administrator will issue and mail Settlement Payments, along with the service awards and attorneys' costs and fees approved by this Court. *Id*. Settlement Payments will remain valid

for 150 days after date of issue. *Id.* at ¶2.3.5. Any uncashed checks will revert and be paid to Greenix. *Id.*

### e. Release

In exchange for the settlement benefits described above, the Named Plaintiffs, Opt-in Plaintiffs and Rule 23 Class Members shall forever, irrevocably, and unconditionally waive, release, and discharge the Released Parties from any and all claims, rights, demands, and liabilities, whether known or unknown, and whether for equitable relief, statutory penalties, compensatory or punitive damages, which could have been asserted against the Released Parties arising out of or relating to any and all allegations raised in the Litigation and that arose at any time up until September 1, 2025. Settlement Agreement, ¶4.4. Such released claims, rights, demands, and liabilities include without limitation claims asserted or that could have been asserted arising out of or relating to any and all allegations raised in the Litigation and any other claims based on failure to pay overtime, failure to pay wages upon termination, failure to provide itemized wage statements, failure to keep records of hours worked or compensation due, attorneys fees and costs, liquidated damages and penalties for any of the foregoing, including without limitation claims under the ERISA, the FLSA, and the laws of any state. *Id.*

Courts in this circuit "have found that normal *res judicata* principles apply in hybrid FLSA/Rule 23 collective/class actions, thus binding non opt-out Rule 23 Class Members who do not specifically opt-in to the release of FLSA claims to the ultimate judgment, unless such a claimant shows grounds for collateral attack on the judgment." *See Pliego v. Los Arcos Mexican Restaurant, Inc.,* 313 F.R.D. 117, 132 (D. Colo. 2016).

## IV. THE PROPOSED SUB-CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

### a. FLSA collective action

This Court conditionally certified this case as a collective action for the following persons:

> All persons who at any point within the last three years were employed by Defendant Greenix to perform pest control activities and related services at a customer's location (such persons may be referred to as "Pest Control Technicians") and were so employed for a period of at least one week.

Dkt. 45. Persons in this group who consented to participate in this case are the Opt-in Plaintiffs for settlement purposes. Settlement Agreement, at ¶ 1.17.

### b. Rule 23 subclasses

For settlement purposes only, the Parties have agreed to certification of the subclasses defined herein. *See supra* Section III (a); Settlement Agreement, ¶ 2.1. When a court is presented with a settlement only class, "it need not inquire whether the class would present intractable problems with trial management, but [] the other requirements for Rule 23 class certification must still be satisfied." *See Pliego,* 313 F.R.D. at 125 (citing *Anchem Products, Inc v. Windsor*, 521 U.S. 591, 620 (1997)). The proposed settlement sub-classes meet these requirements.

### 1. Rule 23(a) Factors

#### a. Numerosity

"A certifiable class must be so numerous that joinder is impracticable." *Helmer v. Goodyear Tire & Rubber Co*., Civil Action 12-cv-00685-RBJ-MEH (D. Colo. Mar. 21, 2014). "There is 'no strict numerical test for determining impracticability of joinder.'" *Marquis v. Tecumseh Prods. Co*., 206 F.R.D. 132, 155-156 (E.D. Mich. 2002), quoting *In re American Medical Systems,* 75 F.3d 1069, 1079 (6th Cir. 1996). "'Impractical' means that joinder would be difficult, or inconvenient but not necessarily impossible. *Millan v. Cascade Water Servs., Inc.,* 310 F.R.D. 593, 595 (E.D. Cal. 2015). *See Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d

648, 653 (4th Cir. 1967) (certifying class of eighteen class members); *Crenshaw v. Maloney*, 13 Fair Empl. Prac. Cas. (BNA) 154, 155 (D. Conn. 1976) (certifying class of sixteen class members))." *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 255 (S.D. Iowa 2001)(certifying class of 17). Here, the subclasses are so numerous to make joinder impracticable, as they range from 14 on the low end (Kentucky) up to 104 on the high-end (Michigan). Fiorelli Decl. ¶14.

"Numerosity also requires that the members of the class be ascertainable with the use of objective criteria." *Helmer*, Civil Action 12-cv-00685-RBJ-MEH at *10. Here, the members of each subclass were identified through Greenix's records. (Fiorelli Decl ¶11).

### b. Commonality

A finding of commonality requires "only a single question of law or fact common to the entire class[.]" *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). The common contention must be "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). It is "not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Commonality still exists if class members differ factually but challenge the application of a commonly-applied policy." *Pliego,* 313 F.R.D. at 126 (citing *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)).

Here, the common question at the heart of each subclass member's claim is whether Plaintiffs engaged in work off-the-clock for which compensation was not provided. See generally FAC.

### c. Typicality

The named Plaintiffs' claims are also typical of the claims of the putative subclass. Like all members of the putative class, they allege they were not paid for off-the-clock work, which resulted in unpaid overtime. *See* FAC; *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, *8 (D. Col. June 1, 2011) ("A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class.").

### d. Adequacy of Representation

"The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396-397 (D. Colo. 2010). In this matter, Plaintiffs and Plaintiffs' counsel can "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).

Plaintiffs' incentives are aligned with those of the subclasses because their claims are governed by the same legal theories of liability. In addition, Plaintiffs are competent and knowledgeable class representatives who have pursued this action vigorously on behalf of their unnamed coworkers. *See* Fiorelli Decl. ¶15. Plaintiffs' counsel are experienced litigators who have extensive experience in class action and wage and hour cases with a long history of being approved as class counsel. *Id.* ¶16; Firm Resume attached to Fiorelli Decl.

### 2. Rule 23(b)(3) factors

Rule 23(b)(3) requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are satisfied here.

### a. Predominance

For common questions of law or fact to predominate under Rule 23(b)(3), "[i]t is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that answers to those common questions be dispositive" of the plaintiff's claims. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). Rather, "the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important that the non-common, aggregation-defeating, individual issues." *Id.* (internal quotation marks omitted). "'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof.'" *Pliego*, 313 F.R.D. at 127 (quoting *United Food and Commercial Workers Union v. Chesapeake Energy Corp.,* 281 F.R.D. 641, 655 (W.D. Okla. 2012)).

The dispute here is whether Greenix's current and former Pest Control Technicians were paid for all hours they worked. These employees were paid in the same manner under the same payment policies and practices. *See* generally FAC; Plaintiffs' Motion for Conditional Certification. Dkt. 31. Therefore, Plaintiffs allege that members of the subclasses were subject to the same alleged treatment and seek relief under the same legal theories related to payment of overtime wages. Further, while damages in wage and hour cases will necessarily vary amongst class members, individualized damages determinations do not preclude certification. *Smith v. Lifevantage Corp.*, 341 F.R.D. 82, 96 (D. Utah 2022) ("The need for individualized damages calculations generally precludes class certification only if completing them will overwhelm the issues that are common to the class, i.e., destroy the predominance of

common issues."); *Harrel's LLC v. Chaparral Energy, LLC (Naylor Farms, Inc.)*, 923 F.3d 779, 798 (10th Cir. 2019)) ("'The fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification.'" (quoting *Menocal v. GEO Grp., Inc.,* 882 F.3d 905, 922 (10th Cir. 2018)).

Here, for settlement purposes, the Settlement Agreement provides the following damages framework: subclass members will receive up to $140 per week based on their number of weeks worked. *See* Settlement Agreement ¶¶ 2.2, 2.3.2.

### b. Superiority

Factors relevant to whether a class action is a superior method of adjudicating a controversy include whether absent class members have shown interest in controlling the litigation, the extent and nature of any litigation concerning the controversy already begun by class members and the desirability of concentrating the litigation in the particular forum. Federal R. Civ. P. 23(b)(3). Here, there are no other unresolved claims against Greenix outside of this litigation.[8] Thus, no other potential class member has demonstrated an interest in controlling this litigation. Furthermore, the District of Utah is ideal for the concentration of this litigation because Greenix is headquartered here. Finally, the class action vehicle is the superior method for adjudicating this controversy because class members that worked for Greenix for shorter periods of time will have relatively small claims, making it unlikely that they will pursue these claims on their own. *See Pliego*, 313 F.R.D. at 127.

For the above-stated reasons, the proposed subclasses satisfy the prerequisites of Rule 23.

## V. THE PARTIES' SETTLEMENT SHOULD BE GRANTED PRELIMINARY APPROVAL.

---

[8] While the *Pizzillo* case involved similar claims, that case has been settled. *See Pizzillo* docket at Dkt. 56.

a. **The FLSA approval criteria are satisfied.**

FLSA settlements must be scrutinized for fairness to determine "whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Pliego*, 313 F.R.D. at 127-28 (quotation modified); *but see Slaughter v. Sykes Enters.*, No. 17-cv-02038-KLM, 2019 U.S. Dist. LEXIS 21767, at *15 (D. Colo. Feb. 11, 2019) (questioning whether it is mandatory that FLSA collective actions be approved by the courts). "If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation." *Pliego*, 313 F.R.D. at 128 (citation modified). Factors courts consider are: "(1) was the settlement achieved in an adversarial context; (2) were the plaintiffs represented by attorneys who can protect their rights; (3) does the settlement reflect a reasonable compromise over issues that are actually in dispute; and (4) is the settlement fair[.]" *Id.* Each factor is satisfied here.

1. **The settlement was achieved in an adversarial context**.

"To meet their obligation to prove a bona fide dispute, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Pliego*, 313 F.R.D. at 128-29. Here, Greenix is a pest control business providing residential pest control services. Opt-in Plaintiffs distribute those pest-control services to residential customers. The Opt-in Plaintiffs contend they were not paid for certain off-the-clock work for approximately 5-10 hours per week of unpaid overtime. Greenix contends that all work performed by employees is lawfully and properly compensated, and

disputes that work was performed as alleged by these individuals, that overtime work resulted from necessary work performed, that its policies and practices violated law, that employees worked more than forty (40) hours per week. Greenix moved to dismiss Plaintiffs' Illinois and Pennsylvania state law claims, and opposed conditional certification of the FLSA class. But for settlement, the Parties had negotiated and put in place a rigorous discovery plan and litigation schedule to allow the parties to develop and present their liability and damages theories to the court. Accordingly, this settlement was achieved in an adversarial context.

### 2. Plaintiffs are represented by competent, experienced wage and hour and class action attorneys.

Plaintiffs' counsel have considerable experience prosecuting both class action and collective action claims involving wage and hour cases. *See* Fiorelli Decl ¶ 16. Plaintiffs' counsel successfully obtained conditional certification of the FLSA collective action and partially defeated Greenix's motion to dismiss, allowing all claims brought under FLSA, Illinois and Pennsylvania law to continue. Plaintiffs' counsel worked zealously for the Opt-in Plaintiffs and class members at the mediation sessions and thereafter to obtain this Settlement. This element is satisfied.

### 3. The settlement reflects a reasonable compromise of the disputed issues.

Plaintiffs allege they worked approximately 5 to 10 hours of unpaid overtime per week. *See* FAC (Dkt. 130) at ¶ 38. Greenix denies that Kirkpatrick or other Pest Control Technicians were required to perform job duties off-the-clock including those alleged in the FAC, and contends that its policies and practices are lawful and that any resulting liability is at Plaintiffs own doing. *See* Answer to FAC (Dkt. No. 131). Greenix asserted a multitude of affirmative defenses including but not limited to that, Plaintiff's actions were a direct violation of Greenix company policies, Plaintiffs generally did not perform more than forty (40) hours of work per week, and Plaintiffs were properly compensated for all work performed. *Id.* Greenix also

conveyed to Plaintiffs its intention to move to decertify the conditionally certified FLSA collective at the close of discovery. Fiorelli Decl. ¶37.

In short, Greenix denies all liability, disputing that Plaintiffs' alleged off-the-clock work occurred, that work was unpaid, and otherwise legally challenges the compensability of alleged off-the-clock work. *See* Answer to FAC (Dkt. No. 131). Despite these differing positions and Greenix's denial of all liability in this case, the Parties agreed to a proposed Settlement for up to $140 per week.[9] The claims also settled for a three-year statute of limitations period for the FLSA claims (as opposed to two-years, see 29 U.S.C.), and the applicable statute of limitations period for the state law claims. Given the drastically differing positions of the Parties, the Parties' intention to vigorously litigate their positions absent settlement, and the cost and uncertainty of continued litigation, the settlement represents a reasonable compromise. *See Cazeau v. TPUSA, Inc*., No. 2:18-cv-00321-RJS-CMR, 2021 U.S. Dist. LEXIS 83588, at *11 (D. Utah Apr. 29, 2021) (approving a FLSA settlement fund of $550,000 where damages were upwards of $3,500,000 in light of the employer's defenses and that both sides were represented by counsel); *TBG, Inc. v. Bendis*, 811 F. Supp. 596, 606 (D. Kan. 1992) (A "settlement is not unfair simply because plaintiff seeks damages significantly in excess of the settlement. Few settlements would transpire if they were required to approach claimed damages.").

### 4. The settlement is fair.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Pliego*, 313 F.R.D. at 130. As noted above, the parties achieved settlement after hard-fought adversarial litigation. The settlement reached is notable in light of the potential damages Plaintiffs sought and Greenix's

---

[9] *See supra* Section III.b.

defenses. The parties engaged in two mediations with a reputable and experienced mediator, where informal discovery was exchanged, engaged in extensive legal research and debate, and continued negotiating for many months to exchange data and legal information to reach the ultimate settlement in this matter. The reasonableness of the result obtained here is further supported by the fact that success in this litigation was not guaranteed, as Greenix vigorously disputed Plaintiffs' allegations. Furthermore, the Settlement Payments allow for relief now, as opposed to years from now.

The Settlement provides for attorneys' fees and costs of $650,000 to be paid from the common fund. [10] In common fund cases, the Tenth Circuit has recognized two different methods of approving fees: the percentage-of-the fund method and the lodestar method, with a preference for the former method. *Voulgaris v. Array Biopharma, Inc*., 60 F.4th 1259, 1263 (10th Cir. 2023). Plaintiffs have $23,186 in costs. *See* Fiorelli Decl ¶ 17. The fees of $626,814 represent approximately 31% of the total settlement fund. District courts within this Circuit have approved percentages similar to what Plaintiffs are requesting here. *See Marquez v. Midwest Div. MMC, LLC*, No. 19-2362-DDC-ADM, 2022 U.S. Dist. LEXIS 210873, at *7 (D. Kan. Nov. 21, 2022) (approving $540,000 in a hybrid Rule 23/FLSA settlement, which represented 30% of the settlement fund; the court noted that counsel spent 639 hours litigating the case); *German v. Holtzman Enters*., No.19-cv-03540-PAB-STV, 2024 U.S. Dist. LEXIS 33564, *12 (D. Col. Feb. 27, 2024) (granting final approval to a hybrid Rule 23/FLSA settlement awarding $195,000 in

---

[10] As this Motion is only for preliminary approval of this Settlement, Plaintiffs provide a brief overview of why the fees and service awards are appropriate. In advance of the final approval hearing, Plaintiffs will file a Motion for Attorneys' Fees and Costs and Service Awards which will provide more detailed support for Plaintiffs' request, including the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are utilized by the Tenth Circuit. See *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454 (10th Cir. 1988). Plaintiffs' counsel will also detail the time spent litigating this matter, which exceeds 1,760 hours as of December 10, 2025. *See* Fiorelli Decl. ¶18.

attorneys' fees, which is 30% of the settlement fund, and $79,178.73 in costs; the court noted counsel spent 527 hours litigating the case); *Cazeau*, 2021 U.S. Dist. LEXIS 83588, at *18-19 (approving attorneys' fees of $183,315 in an FLSA case, which was 33% of the fund; the court noted counsel spent 470 hours litigating the case).

The amount of fees is still appropriate should the Court apply the lodestar method. As of December 10, 2025, Plaintiffs' counsel have spent over 1760 hours litigating this case, which equates to the reasonable rate of approximately $356.00 per hour. *See* Fiorelli Decl. ¶18. *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1142 (10th Cir. 2023) (noting district court found reasonable the counsels' average hourly rate, which was under $500).

The service award of $15,000 requested for Plaintiff Kirkpatrick is also appropriate. "Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff." *German,* 2024 U.S. Dist. LEXIS 33564 *16 quoting *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017). Indeed, courts have recognized risks attendant with being a named plaintiff, including that plaintiffs may risk negative recommendations from past employers when seeking employment, and future employers may be hesitant to hire the named plaintiffs because of their involvement with a case. *Cazeau*, 2021 U.S. Dist. LEXIS 83588, *17.

Here, Plaintiff Kirkpatrick initiated this FLSA lawsuit, subjecting himself to the risks discussed above. He sought Plaintiffs' counsel to bring this case and assisted with the factual investigation of the claims. Fiorelli Decl. ¶19. He submitted a declaration in support of FLSA collective action certification. *Id. ¶*20. He responded to voluminous discovery requests. *Id.* ¶21. He answered survey questions. *Id.* ¶22. He attended two full-day mediation sessions, taking time off work to do so. *Id.* ¶23. He had multiple, frequent communications with counsel on various

matters. ¶24. He consulted with counsel on this settlement. ¶25. And due to his hard work, the Opt-in Plaintiffs will receive damages that they otherwise likely would not have received.

Further, the amount Plaintiff Kirkpatrick requests is in-line with awards granted in other cases. *See German*, 2024 U.S. Dist. LEXIS 33564 (approving $10,000 awards to each individual plaintiff for their work in meeting with counsel, responding to discovery and deposition and working towards settlement); *Cazeau*, 2021 U.S. Dist. LEXIS 83588, *15-17 (approving $12,500 awards each for two plaintiffs who sought counsel to pursue the class's interests, identified additional plaintiffs, helped prepare and consult for the mediation and helped discover facts that formed the basis of the suit); *see also Marquez,* 2022 U.S. Dist. LEXIS 210873, at *11-12 (approving awards for the named plaintiffs in the amount of $18,000, $12,000 and $6,000); *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, *52 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Charles v. Opinion Access Corp*., No. 16-CV-6868 (KAM) (JO), 2020 U.S. Dist. LEXIS 45633, *17-18 (E.D.N.Y. Mar. 13, 2020) (citations omitted) ("The plaintiffs request incentive awards of $15,000.00 for each of the two named plaintiffs, and an additional $5,000.00 incentive award for opt-in plaintiff Freddy Graciano. Incentive awards are commonly given to plaintiffs in class actions in recognition of the time and effort they expend and the risks they incur in bringing the action. The amounts requested for the incentive awards are reasonable.").

### b. **The Rule 23 approval criteria are satisfied.**

There is a two-step process for approving a Rule 23 settlement. *Pliego*, 313 F.R.D. at 128. The first step is preliminary approval, which involves "the Court mak[ing] a preliminary determination regarding fairness, reasonableness, and adequacy of the settlement terms." *Id.* The second step "involves a final fairness hearing, at which point class objectors (if any) may provide

testimony, and the Court again decides whether the settlement is fair, reasonable, and adequate in light of all the circumstances." *Id.* (citations omitted).

"[P]reliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is … 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Securities Litig.*, No. 07-cv-02351-PAB-KLM; 07-cv-02412; 07-cv-02454; 07-cv-02465; 07-cv-02469, 2013 U.S. Dist. LEXIS 122593, *10 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* at *11 (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

The settlement here is fair, reasonable and adequate. It was honestly negotiated at arms-length between experienced counsel, which included two rounds of mediation with an experienced mediator. Fiorelli Decl. ¶9. The parties engaged in discovery and exchanged data and information in aid of reaching a fair settlement. *Id.* at ¶¶3, 7.  It has no obvious deficiencies; to the contrary, it is fair, reasonable and adequate. As discussed above with respect to the FLSA portion of the settlement, Class Members, like the FLSA Opt-in Plaintiffs will have the opportunity to submit a claim form to receive up to $140 per week of work. This is a fair and reasonable compromise, considering Plaintiffs pled 5 to 10 hours per week of overtime and Greenix was prepared to mount a defense that Plaintiffs worked no overtime or off-the-clock work, violated company policies, and were paid for all compensable time worked.

Further, attorneys' fees and costs are appropriate for the same reasons discussed above.

Plaintiffs Villafane and Young, who provided declarations in support of conditional certification and are the putative representatives named in the First Amended Complaint for the Illinois, New Jersey and Pennsylvania subclasses are requesting $7500 each as service awards for their participation in this case, which includes the aforementioned activities as well as participation in informal discovery and investigation, multiple communications with counsel, one mediation and settlement negotiations. Fiorelli Decl., ¶¶26-35. The remaining subclass Plaintiffs, who are willing to have their name on this lawsuit and represent the other state sub-classes in this Settlement, are requesting $500 each. *Id.* ¶36. These amounts are reasonable in light of the case law cited above (see pages 22-23 supra) and the fact that without these Plaintiffs' efforts, the settlement would not have been possible for the absent Rule 23 class members, who have *not* contributed to this case to date.

In the Tenth Circuit, district courts may also consider the following factors  at the preliminary approval stage in aid of its  determination of the fairness, reasonableness and adequacy of the settlement: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Pliego*, 313 F.R.D. at 128 (citing  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors likewise support preliminary approval.

### 1.  The settlement was fairly and honestly negotiated.

The Parties exchanged both formal and informal discovery, negotiating over two mediation sessions and nine additional months of informal settlement discussions. Both parties

were prepared for vigorous discovery and litigation if settlement was not achieved. The process, which was honest and fair, ultimately resulted in the exceptional result of providing the Class Members with immediate recovery of damages where the possibility of future relief after protracted litigation was uncertain.

### 2. The parties believe the settlement is fair and reasonable.

Here, all Parties were represented by experienced counsel, who believe that the settlement is fair and reasonable given the allegations, defenses, time and cost of protracted litigation, and the uncertainty associated with this type of litigation. See Settlement Agreement, ¶5.3.

### 3. Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.

As discussed throughout this motion, Greenix disputes that Plaintiffs and the class members engaged in off-the-clock work and otherwise disputes that Plaintiffs engaged in any work that has not already been compensated. Greenix also informed Plaintiffs it intended to oppose class certification of the state-law claims, and would not have consented to the addition of other state-based Rule 23 subclasses. Fiorelli Decl. ¶37. Accordingly, whether Plaintiffs could recover for themselves, let alone for any class, is far from guaranteed.

### 4. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

While Plaintiffs dispute Greenix's defenses, they acknowledge that there are risks associated with moving forward. These issues would most certainly be the subject of multiple motions for summary judgment and motions to decertify or oppose certification. If allowed to proceed to trial, the issues would be hotly contested, which would only occur after the Parties incurred significantly more litigation expenses and attorneys' fees. Accordingly, the value of an immediate recovery far outweighs the mere possibility of potentially greater future relief.

For all these reasons, the Parties submit that the Settlement is fair, reasonable and adequate and ask this Court to grant preliminary approval.

## VI.    THE NOTICE PLAN IS APPROPRIATE.

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." The notice provided to a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 12 (1985). Notice is sufficient "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). The notice should inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(b)(2)(B). The proposed notice (*see* Settlement Agreement, Exhibit A) includes these items. It furthermore describes how a Class Member's failure to opt-out will bind them to the Settlement. *See Pliego*, 313 F.R.D. at 132.

"Rule 23 permits providing notice to the class members by 'United States mail, electronic means, or other appropriate means.'" *Apodoca v. Armada Skilled Home Care of NM LLC,* No. 18-cv-1071 KG/FR, 2025 U.S. Dist. LEXIS 100231, *4 (D.N.M. May 27, 2025) (quoting Fed. R. Civ. P. 23(c)(2)(B)); *Suaverdez v. Circle K Stores*, No. 20-cv-01035-RM-NYW, 2021 U.S. Dist. LEXIS 206456, *35-36 (D. Colo. June 28, 2021) ("'It is beyond dispute that notice by first class mail ordinarily satisfies [R]ule 23(c)(2)'s requirement that class members receive the best notice practicable under the circumstances.'") (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966

F.2d 1483, 1486 (D.C. Cir. 1992)).

Here, notice will be both e-mailed and mailed using the most recent contact information

from Greenix's records. Settlement Agreement, ¶¶ 3.3.2; 3.3.3. As the Parties' proposed Notice

contains the required contents and will be sent by both email and mail, it meets the requirements

of Fed. R. Civ. P. 23(c)(2)(B).

As for the Opt-in Plaintiffs, they have already given their consent to participate in this

case and have Plaintiff Kirkpatrick represent them and be bound to his decisions.[11] Accordingly,

the Opt-in Plaintiffs will not be able to object or exclude themselves from the Settlement.

## VI.  **CONCLUSION**

WHEREFORE, the Parties respectfully request that the Court enter an Order that:

(1) Preliminarily approves the Settlement Agreement as fair, reasonable, and adequate to

the collective and class action classes; (2) Preliminarily certifies the Rule 23 Settlement Class

for claims brought pursuant to Fed. R. Civ. P. 23(e); (3) Preliminarily approves Dworken &

Bernstein Co., LPA as class counsel; (4) Preliminarily approves the Named Plaintiffs as the class

representatives; (5) Approves the contents and method of notice to be given to the Rule 23 Class;

(6) Preliminarily approves Phoenix as the settlement administrator of the settlement and, in

accordance with the terms of the Settlement and the Preliminary Approval Order, instructs

dissemination of settlement notice to the collective and class action Classes; (7) Establishes

procedures and schedules deadlines for Rule 23 class members to object to the settlement; (8)

---

[11] In the Court-approved notice that issued (see Dkts. 31-1, 45), the Opt-in Plaintiffs were
advised that "If you choose to join in the lawsuit, you will be bound by the judgment, whether it
is favorable or unfavorable. You will also be bound by, and will share in, any settlement that
may be reached on behalf of the class. By joining this lawsuit, you designate the representative
Plaintiff as your agent to make decisions on your behalf concerning the litigation, the method
and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel
concerning fees and costs, and all other matters pertaining to this lawsuit. The decisions and
agreements made and entered into by the representative Plaintiff will be binding on you."

Schedules the Final Fairness Hearing and provides that a timely objection to the settlement shall be heard and considered by the Court at the Final Fairness Hearing; (9) Schedules deadlines for the filing of documents in support of entry of the Final Approval Order; and (10) permits Plaintiffs to file their Second Amended Complaint to effectuate the Settlement Agreement.

For this Court's convenience, a proposed order preliminarily approving this settlement and addressing these matters is attached hereto as Exhibit 3.

Dated: January 16, 2026                    Respectfully Submitted,

By:  */s/ Nicole T. Fiorelli*
Nicole T. Fiorelli (admitted *pro hac vice*)
Frank A. B4rtela (admitted *pro hac vice*)
**DWORKEN & BERNSTEIN CO., LPA**
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com

April L. Hollingsworth (Bar No. 9391)
Katie Panzer (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, UT 84105
Telephone: (801) 415-9909
Fax: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

*Attorneys for Plaintiffs*

36432020_v4